UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDON M.[1],                          )
                                        )
              Plaintiff,                )
                                        )
      v.                                )        Case No. 3:20-cv-59
                                        )
ANDREW M. SAUL,                         )
Commissioner of Social Security,        )
                                        )
              Defendant.                )

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Brandon M., on January 16, 2020.  For the following

reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Brandon M., filed an application for Supplemental Security Income on

April 14, 2017, alleging a disability onset date of September 1, 2014.  (Tr. 24).   The claim was

denied initially on June 8, 2017, and upon reconsideration on August 28, 2017. (Tr. 24).   On

September 17, 2017, Brandon M. filed a written request for a hearing pursuant to 20 CFR §

416.1429.  The video hearing was held on December 11, 2018, before Administrative Law Judge

(ALJ) Kevin Plunkett.  (Tr. 24).  Vocational Expert (VE) Craig Johnston appeared at the hearing.

(Tr. 24).  The ALJ issued an unfavorable decision on February 13, 2019. (Tr. 24-33).  Brandon

M. then filed this petition for judicial review on January 16, 2020.

At step one of the five-step sequential analysis for determining whether an individual is

disabled, the ALJ found that Brandon M. had not engaged in substantial gainful activity since

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

April 14, 2017, the application date.  (Tr. 26).

At step two, the ALJ determined that Brandon M. had the following severe impairments: depression; anxiety; panic disorder; and schizoid personality disorder.  (Tr. 26).  The ALJ found that Brandon M.'s severe impairments significantly limited his ability to perform basic work activities.  (Tr. 26).  Furthermore, the ALJ found that Brandon M.'s treatment records reflected the presence of gastrointestinal reflux disease, which caused no more than a minimal limitation in his ability to perform basic work activities. (Tr. 26).  Lastly, the ALJ found that Brandon M.'s treatment record documented no diagnosis of alcohol abuse or any evidence of long-term alcohol use, therefore to the extent that his alcohol use was an impairment, it was considered nonsevere. (Tr. 26).

At step three, the ALJ concluded that Brandon M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 26).  The ALJ considered whether the severity of Brandon M.'s mental impairments met or medically equaled the criteria of Listings 12.03, 12.04, or 12.06.  (Tr. 27).  The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves.

(Tr. 27).  The ALJ indicated that a marked limitation meant the ability to function independently, appropriately, effectively, and on a sustained basis was seriously limited, while an extreme limitation was the inability to function independently, appropriately, or effectively, and on a sustained basis.  (Tr. 27).  The ALJ found that Brandon M. had no limitation in understanding, remembering, or applying information; a moderate limitation interacting with others; a mild

limitation concentrating, persisting, or maintaining pace; and no limitation adapting or managing himself. (Tr. 27). Because Brandon M.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria were not satisfied. (Tr. 28). Additionally, the ALJ determined that Brandon M. did not satisfy the paragraph C criteria. (Tr. 28).

After consideration of the entire record, the ALJ then assessed Brandon M.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: occasional interaction with supervisors, and less than occasional contact with coworkers and the general public.

(Tr. 28). The ALJ explained that in considering Brandon M.'s symptoms he followed a two-step process. (Tr. 28). First, he determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Brandon M.'s pain or other symptoms. (Tr. 28). Then he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Brandon M.'s functioning. (Tr. 28).

After considering the evidence, the ALJ found that Brandon M.'s medically determinable impairments reasonably could be expected to cause some of the alleged symptoms. (Tr. 29). However, the ALJ concluded that Brandon M.'s statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 29).

At step four, the ALJ determined that Brandon M. had no past relevant work. (Tr. 31). Considering Brandon M.'s age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that he could

perform,  including hand packager (237,000 jobs nationally), janitorial cleaner (400,000 jobs

nationally), and machine feeder/off bearer (29,000 jobs nationally).  (Tr. 32).  The ALJ found

that Brandon M. had not been under a disability, as defined in the Social Security Act, from April

14, 2017, the date the application was filed, through the date of the ALJ's decision, February 13,

2019.  (Tr. 33-34).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within

the meaning of the Social Security Act is limited to a determination of whether those findings are

supported by substantial evidence.  **42 U.S.C. § 405(g)** ("The findings of the Commissioner of

Social Security, as to any fact, if supported by substantial evidence, shall be conclusive"); ***Moore***

***v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th

Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct

legal standards and supported her decision with substantial evidence").  Courts have defined

substantial evidence as such relevant "evidence as a reasonable mind might accept to support

such a conclusion."  ***Zoch v. Saul***, 2020 WL 6883424, at *3 (7th Cir. Nov. 24, 2020); ***Biestek v.***

***Berryhill***, 139 S. Ct. 1148, 1154 (2019); ***Bates***, 736 F.3d at 1098.  A court must affirm an ALJ's

decision if the ALJ supported his findings with substantial evidence and if there have been no

errors of law.  ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However,

"the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."

***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish

"disability" under the terms of the Social Security Act.  The claimant must show that he is unable

"to engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be

4

expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see Biestek v. Berryhill,* 139 S. Ct. 1148 (2019) (upon the request of a disability benefits applicant, a vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Brandon M. has requested that the court remand this matter for additional proceedings, or in the alternative, reverse the ALJ's decision and award benefits.  In his appeal, Brandon M. argues that:  (1) the ALJ's decision was premised on cherry-picked evidence and therefore the ALJ failed to provide an accurate and logical bridge to support critical conclusions and assertions; (2) the ALJ erred in relying on the State Agency consultants' opinions because they were outdated and incomplete; (3) the ALJ erred at Step Two (and beyond) given Brandon M.'s obesity; (4) the ALJ erred at Step Three in failing to properly consider (a) the "B Criteria," (b) the "Paragraph C" Criteria, and (c) Brandon M.'s impairments, individually or in combination, medically equaled a listing; (5) the residual functional capacity (RFC) was not supported given that (a) it did not accommodate Brandon M.'s conditions, (b) the ALJ completely ignored a whole series of Global Assessment of Functioning scores favorable to Brandon M., and (c) the ALJ erred in weighing Brandon M.'s and the third parties' statements; (6) the ultimate decision was not supported by substantial evidence given that the ALJ failed to provide a complete picture of Brandon M.'s functional capacity to the vocational expert; and (7) the Appeals Council erred in not remanding the case given the material evidence submitted after the ALJ's decision.

Of the seven arguments presented by Brandon M., the court need only address the second issue.  Brandon M. argues that the ALJ erred in relying on the State Agency consultants' (Consultants) opinions because they were outdated and incomplete.  The ALJ, in his decision, found "the mental assessments rendered by the State agency psychological consultants most persuasive because it was consistent with the evidence as it existed at the time that they reviewed the record." (Tr. 31).  There were two State Agency assessments in the record, and the ALJ referenced both. (Tr, 30-31).  The first was dated June 6, 2017 and the second was dated August 23, 2017. (Tr. 84, 95).

Brandon M. claims that the consultants' opinions were premised on two pieces of

evidence, a November 7, 2016 session from Oaklawn Psychiatric Center and medication

management sessions in January and March 2017.  Brandon M. states that the Consultants failed

to consider critical evidence of abnormal functioning, but more importantly, that they only

considered evidence through March 2017.  Therefore, they did not consider the additional

evidence that arose between late August 2017 and April 2018.

Surprisingly, the Commissioner addresses this argument in a footnote. He states that the

Consultants reviewed Brandon M.'s medical records from Oaklawn Psychiatric Center,

Memorial Hospital of South Bend, South Bend Clinic, and Memorial Epworth Center, as well as

statements from Brandon M. and his mother.  To Brandon M.'s argument that the Consultants

failed to consider critical evidence of abnormal functioning, the Commissioner states that the

Consultants did not ignore Brandon M.'s subjective allegations, rather they found they were

inconsistent with the rest of the record.  As to the argument that the opinions were outdated, the

Commissioner does not deny that the Consultants' assessments did not consider evidence post

August 2017, but argues that Brandon M. failed to show that the ALJ did not to consider the

complete record or that the later acquired evidence documented significant new medical

diagnoses or worsening of symptoms.

An ALJ may not rely on outdated opinions of agency consultants "if later evidence

containing new, significant medical diagnoses reasonably could have changed the reviewing

physician's opinion. ***Moreno v. Berryhill***, 882 F.3d 722, 728 (7th Cir. 2018); *see generally*

***Lambert v. Berryhill***, 896 F.3d 768 (7th Cir. 2018); ***Campbell v. Astrue***, 627 F.3d 299, 309 (7th

Cir. 2010) (noting ALJ's error in relying on opinions of a State agency psychiatrist and

psychologist who did not have access to subsequently created medical records from treating

psychiatrist); ***Suetkamp v. Saul***, 406 F.Supp.3d 715, 721 (N.D. Ind. Aug. 27, 2019) (citing ***Stags***

***v. Astrue***, 781 F.Supp.2d 790, 794-96 (S.D. Ind. 2011) ("finding that the medical record omitted

from review provided 'significant substantive evidence' regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was 'incomplete and ineffective'")).

As stated above, the ALJ gave weight only to the Consultants findings because he found them to be "most persuasive". (Tr. 30-31).  The first assessment dated June 6, 2017 was completed by Dr. Kari Kennedy who found that Brandon M. had moderate limitations in interacting with others and assessed no more than a mild limitation in the remaining "paragraph B" criteria. (Tr. 30-31).  The August 23, 2017 assessment was completed by Dr. Amy S. Johnson, who affirmed the mental assessment provided by Dr. Kennedy. (Tr. 31).  Lastly, the ALJ noted that he considered Brandon M.'s mother's statements as portrayed in Third Party Function reports dated May 11, 2017 and August 9, 2017, but that the statements were not as persuasive because "she is not medically trained to assess the severity of [Brandon M.'s] impairments or his mental limitations." (Tr. 31).

Between the date of the second, and last, State Agency medical assessment and the date of the ALJ's decision, the court counts at least five visits with medical personnel that the Consultants could not have considered in rendering their findings.  The Commissioner's argument that the ALJ was warranted in relying on the Consultants' assessments because the additional evidence accumulated after August 23, 2017 did not reflect a significant change or worsening in symptoms is unpersuasive.

In a November 7, 2017 visit with Dr. Mark Snell, Brandon M. reported that he had "violent fantasies of killing another human." (Tr. 514).  On January 22, 2018, Brandon M. was arrested for intimidation of a police officer which resulted in a trip to the emergency room to be evaluated. (Tr. 557).  On February 28, 2018, he saw Dr. Susan Henderson and reported depression and panic attacks. (Tr. 503).  He stated his panic attacks occurred about three to four

times a week. (Tr. 503).  During each panic attack, Brandon M. described to Dr. Henderson that his "fingertips would become numb, [he] fe[lt] outside his body, [his] [] heart [raced], [and he had] restless legs." (Tr. 503).  In a March 2018 medical visit with Dr. Manana Gegeshidze, Brandon M. stated, "he ha[d] been doing fairly well since his last visit." (Tr. 495).  He denied any thoughts of suicide or harm to others. (Tr. 495).  On April 2, 2018, Brandon M. met with Dr. Snell.  (Tr. 490).  Dr. Snell stated "Brandon [M.] has made poor progress in therapy" and "has violent fantasies of killing another human but sa[id] he probably would not as he would probably get caught." (Tr. 491).  There were multiple occasions in which medications were adjusted after the last assessment was completed including adding new medications, increasing current medications, and eliminating medications. (Tr. 482, 487, 496).

The ALJ erred by giving *any* weight to the Consultants' assessments because the assessments were outdated.  While the record does not contain evidence of new diagnoses after the August 17, 2017 State Agency assessment, it does reflect alarming new symptoms, such has homicidal fantasies, as well as a great deal of fluctuation in symptoms that warranted an increased level of medication.  With that, the ALJ could not accurately weigh or rely on the Consultants' findings.

In relation to this issue, when stating that he found the mental assessments rendered by the Consultants to be most persuasive, the ALJ also stated that "the hearing level evidence reflects ***no worsening of [] [Brandon M.'s] symptoms*** …" warranting reliance on the outdated assessments. (Tr. 31).  "When an ALJ denies benefits, he must build an accurate and logical bridge from the evidence to his conclusion, and he must [sic] not 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record." ***Holsinger v. Commissioner of Social Security***, 2018 WL 1556409, at *8 (N.D. Ind. Mar. 29, 2018) (citing ***Chase v. Astrue***, 458 Fed.Appx. 553, 556-57 (7th Cir. 2012); ***Ayala v. Berryhill***, 2018 WL 6696548, at *1 (N.D. Ill.

9

Dec. 20, 2018).   The ALJ's conclusion that the evidence gathered after August 23, 2017 reflected no worsening in symptoms is not accurate and an example of using a lay opinion in place of a medical opinion.  The determination of whether a claimant is disabled is reserved for the ALJ, however, medical diagnoses and the level of related symptoms are not.

Brandon M. makes six other arguments regarding his subjective symptoms and the RFC. However, because the ALJ erred in relying on outdated assessments completed by State Agency Consultants, the court need not address the additional arguments at this time.  The ALJ will have the opportunity to revisit these other issues on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED.**

ENTERED this 21st day of January, 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge